# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 12:37 pm, Jun 07, 2018

| | |
|---|---|
| JEROME ANTWAN COOPER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | CV418-046 |
| ) | CR414-345 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Jerome Antwan Cooper was indicted, convicted by a jury of his peers, and sentenced to 120 months' imprisonment as a felon in possession of a firearm. Docs. 1 (indictment), 53 (jury verdict), 75 (judgment), 95 (appeal opinion affirming conviction and sentence). As summarized by the Court of Appeals:

> On March 10, 2014, Jeff Hodges, an employee at a Home Depot in Savannah, Georgia, noticed suspicious behavior by two shoppers. After reporting the suspicious behavior to his supervisor and another employee, he approached the two men and identified himself as a Home Depot asset protection employee. One man ran away, but the other man -- later identified as Cooper -- did not. Hodges and Cooper got into a physical altercation, and Hodges "did everything [he] could to control [Cooper's] hands" to prevent Cooper from reaching into his pocket. Hodges called for help and his supervisor and the other Home Depot employee came to his aid.
>
> During this struggle, Officer Brandon Tufts of the Savannah-

Chatham Metropolitan Police Department was in the Home Depot parking lot assisting another officer with a traffic accident. A Home Depot employee yelled to Officer Tufts that "loss prevention was taking a shoplifter into custody near the garden entrance." After arriving on the scene, Officer Tufts saw a group of Home Depot employees on the ground trying to control Cooper by "keeping his hands away from his body." Tufts identified himself to Cooper, told him to stop resisting, and said "I'm going to place [you] in handcuffs. . . . until I figure [ ] out exactly what's going on." He then put Cooper in handcuffs and gathered information about what happened from the Home Depot employees.

Next, Officer Tufts asked Cooper whether "he had anything on him that would hurt" Tufts. Tufts could not recall whether Cooper responded in the negative or did not reply at all. But he observed that a heavy object seemed to be in Cooper's right shorts pocket, and suspected that Cooper had a weapon. Thus, Officer Tufts searched Cooper's pocket and found a loaded pistol. At the time, Cooper was a convicted felon.

*United States v. Cooper*, 689 F. App'x 901, 902 (11th Cir. 2017).

Cooper, unhappy with his lot, has been arguing counsel was deficient at every stage of the proceedings. Doc. 24 (motion to dismiss counsel); doc. 33 (letter complaining about counsel's performance, particularly her failure to meet with him until the motions deadline had expired and her decision not to file a motion to suppress); docs. 32 & 40 (attorney inquiry hearing denying motion to appoint new counsel); docs. 35 & 41 (reconsideration attorney inquiry hearing again denying motion to appoint new counsel); docs. 57, 59 & 71 (requesting new counsel be appointed to raise his IAC claims on appeal); doc. 63 (counseled motion

2

for new trial preserving his IAC claims); doc. 68 (*pro se* motion for a new trial on IAC grounds, requesting new counsel be appointed to represent him). Having lost his appeal, which had been largely predicated on trial counsel's alleged failures, he has returned in this collateral proceeding to argue that appellate counsel too was deficient in failing to convince the Eleventh Circuit to see things his way. Doc. 103 at 4-7; doc. 109 at 1-9. The Government moves to dismiss his 28 U.S.C. § 2255 motion, contending that Cooper's IAC claims are all utterly without merit. Doc. 108. The Court agrees.

I.  APPELLATE COUNSEL'S PERFORMANCE

Cooper faults appellate counsel for failing to convince the Eleventh Circuit that trial counsel was deficient, that the district court erred in failing to appoint new counsel, and that he was prejudiced as a result. Doc. 103. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.* Here, Cooper has failed to meet either prong.

Cooper clearly believes now, as he did from the start, that trial counsel's failure to meet with him in person before the deadline for filing motions had closed comprised ineffective assistance. Had counsel done so, she would certainly have filed a motion to suppress the gun -- regardless of whether it was warranted under the case law. That motion, he sincerely believes, would have wrapped up the entire matter long before trial. This argument, of course, has been a loser, both before the Magistrate Judge, the District Judge (docs. 40 & 41), and on appeal (doc. 95).

As he has been told at each stage of the proceedings, searches by private citizens "do[ ] not implicate the Fourth Amendment" unless they are acting "as an instrument or agent of the government." *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003). Cooper was nabbed by Home Depot loss prevention agents on his way out into the parking lot. They are private citizen, not government actors within the

meaning of the Fourth Amendment.[1]  Because any motion to suppress the gun would have been denied, Cooper was not prejudiced *in any way* by counsel's refusal to file a hopeless motion to suppress.  *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (the Sixth Amendment does not require counsel to raise every non-frivolous argument on a client's behalf); *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2015) ("If a search was constitutional, then counsel is not obligated to move to suppress the evidence . . . and a defendant is not prejudiced by counsel's failure to do so.").

Moreover, trial counsel's failure to meet with Cooper sooner does not prove anything about the sufficiency of her evaluation of the merits of such a motion.  *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) ("[C]ounsel need not always investigate before pursuing or not pursuing a line of defense.  Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to

---

[1]  True, the responding police officer, after witnessing store employees struggling with Cooper, did place him in handcuffs until he could assess the situation.  But the officer had already been informed by another employee that Cooper was a shoplifter and, under the circumstances presented, the officer clearly had a reasonable suspicion both that Cooper had just committed a crime and that he posed a danger.  The removal of the suspected weapon from Cooper's pocket violated none of his Fourth Amendment rights.  *Terry v. Ohio*, 392 U.S. 1 (1968).

decline to investigate a line of defense thoroughly."); *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (to be effective, counsel is not required to "pursue every path until it bears fruit or until all hope withers."); *see also Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994) (the requirement to "investigate" a case "reflects the reality that lawyers do not enjoy the benefit of endless time, energy, or financial resources."). As Cooper is aware, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir.1993). Indeed, trial counsel's "plausible tactical reasons for why she did not file a motion to suppress," including not wanting Cooper to admit under oath that he had a gun in his pocket and wanting to hold her trial cross-examination strategy close to the vest, formed the basis of the Court of Appeals' denial of Cooper's IAC claim on appeal. *Cooper*, 689 F. App'x at 904 (explaining that "Cooper has not defeated the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'").

But Cooper has doubled down, arguing that appellate counsel too was ineffective for failing to win that argument on appeal. Doc. 103 at

6

5-6. He contends appellate counsel should have better argued that trial counsel could not possibly have learned all the facts she needed without seeing him in person, and that she clearly did not do the research necessary to evaluate the merits of the desired suppression motion until after meeting him (after the deadline to file the motion had passed, and the window for raising such an argument had closed[2]). Had she done so, she would have filed a winning suppression motion because she would have known the facts: that no "probable cause" existed for his warrantless arrest where "Officer Tufts arrested [him] without having witnessed him commit a crime, without a warrant, and without eye

---

[2]  Of course, this is not true. Cooper contends that trial counsel's notes reflect she hadn't fully investigated the merits of the suppression motion until she met with him, after the deadline closed. Doc. 109 at 7. But as Cooper has been told before, the Court is able to reopen the motions deadline for good cause. The passage of that deadline was not dispositive to her decision not to file the motion. And as he concedes, Cooper's attorney made the call not to file the motion, and not to request a reopening of the deadline to file the motion even *after* further research, the client interview, the internal Home Depot report, and the state's preliminary hearing transcript months later. *Id*. What he misapprehends is that her "strategic decision" was made based on more complex considerations than filing a Hail Mary motion just to throw something at the wall in the hope that it might stick.

Cooper has now heard from the magistrate judge, the district judge, and the Court of Appeals that trial counsel fully considered the effects of such a motion -- guaranteed to lose -- on the outcome of his trial, and decided it wasn't worth gutting her entire defense and cross-examination to have him admit to having a gun. Cooper has demonstrated he is entirely unwilling to recognize this, however, and will have to accept that the courts view counsel's decisionmaking and strategy differently. And when viewed properly, trial counsel's performance comes well within "the wide range of reasonable professional assistance." *Cooper*, 689 F. App'x at 904.

witness testimony that a crime had occurred." Doc. 1 at 47.

This language, of course, is raised verbatim from the argument already resoundingly rejected on appeal: that the arresting officer lacked probable cause, having "arrested [ ] Cooper without a warrant, without having witnessed him commit a crime, and without eyewitness testimony that a crime had occurred." Doc. 108, Exh. B (Cooper Appeal Brief) at 21-22. Beyond mere dissatisfaction with the outcome -- which does not comprise ineffective assistance of counsel -- Cooper does not actually point to anything appellate counsel failed to do or ought to have argued differently. That appellate counsel argued that trial counsel's performance was deficient to the best of his abilities, and lost, does not render his performance deficient. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press [even] nonfrivolous points").[3]

---

[3] "Because Cooper's claim fails on the performance prong, we need not consider the prejudice prong." *Cooper*, 689 F. App'x at 907 n. 2. But it would have failed on the prejudice prong as well. As summarized by the Government:

> The testimony of the officer was that a Home Depot employee told him that "loss prevention was taking a shoplifter into custody near the garden entrance." The officer headed to that area, and he observed "a group of people on the ground . . . trying to control this one subject." The officer noticed, specifically, that the individuals "were focusing all their attention and effort on controlling [Cooper's] arms . . . keeping his hands away from his body." He

8

Cooper also argues that appellate counsel was ineffective for failing to convince the Court of Appeals that trial counsel was profoundly, generally ineffective. Doc. 1 at 8 (arguing that trial counsel failed to apprise him of the risks of trial and strength of the Government's case). He lists the Government's "11th hour 'Perry Mason' style witness," Michael Claxton, as being key to his refusal to accept the Government's plea offer.[4]  *Id.* at 32, 52-53. Had Cooper known the Government would call one of the three Home Depot

---

knew that the people holding Cooper down were employees of Home Depot; he had dealt with the asset protection employees there before. As the officer handcuffed Cooper, employees of Home Depot told him that Cooper's partner in the shoplifting had fled on foot, and the office put out a description of that suspect over his radio. The employees of Home Depot "briefly described [to the officer] what happened in the store and that [Cooper was a shoplifter and they were going to prosecute." All that information amply supplied probable cause for a shoplifting arrest.

Doc. 108 at 15-16. In addition to supporting a probable-cause arrest, these facts clearly support a finding that the officer reasonably suspected that Cooper was engaged in criminal activity, justifying a *Terry*-stop and frisk to assess the danger Cooper posed. *See United States v. Griffin*, 696 F.3d 1354, 1357-58 (11th Cir. 2012) ("undisputed" that reasonable suspicion existed where "store's security guard came running out and informed him that a man had attempted to steal some clothing"); *id.* at 1359 ("Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened."). "The frisk here occurred immediately after the officer handcuffed Cooper and helped him to his feet, and that frisk discovered the firearm that predicated the federal charges." Doc. 108 at 18, citing doc. 86 at 69-70.

[4]  Cooper "abandon[ed]" his "claim of ineffective assistance of counsel during plea bargaining." Doc. 109 at 8. It is unclear, however, just how broadly or narrowly he wished to relinquish his claim. The Court thus evaluates, on the merits, his claim that counsel's failure to anticipate Michael Claxton's inevitable testimony swayed his reasoning in rejecting the Government's proffered plea.

employees who held him down and felt the firearm in his pants, well, he would certainly have accepted the proffered plea deal instead of going to trial. That's nonsense.

It is unfathomable that the testimony of one of the witnesses to his arrest would not be introduced at trial. As succinctly stated by the Government, "[t]his was not a case with covert operations, undercover informants, clandestine surveillance, reams of documentary evidence, or secret recordings. . . . He shoplifted items from Home Depot, he was confronted outside by Home Depot employees, he struggled with those employees, he was handcuffed by the responding police officer, and [those employees were] there when that officer found the gun in his pocket. None of the government's case was any secret to Cooper[.]" Doc. 108 at 22.

To demonstrate *Strickland*-level prejudice, a movant must first "demonstrate a reasonable probability [he] would have accepted the . . . plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). There is nothing about the testimony of one of three eyewitnesses to the recovery of a gun from his pants that could possibly have been such a shock that Cooper would

not have gone to trial had he known for sure that one of those witnesses would testify. Movant's "disingenuous contention, that but for counsel's [deficiency] he would have pleaded guilty, is hogwash." *Ervin v. United States*, 2017 WL 465471 at *3 (S.D. Ga. Feb. 1, 2017). Movant rejected the plea agreement because he "thought he could do better" and the fact that he "gambled and lost, in the face of overwhelming evidence of his guilt, does not render his counsel's performance deficient." *Id.* Appellate counsel's failure to argue a meritless claim, of course, is not defective. *Jones*, 463 U.S. at 751.

Appellate counsel was also ineffective, Cooper contends, by failing to demonstrate the district court erred by declining (repeatedly) to appoint new counsel. Cooper believes his case was irrevocably prejudiced because, had new counsel been appointed, a 4-point enhancement under U.S.S.G. § 2K2.1(b)(6)(B) would not have been applied at sentencing. *Id.* at 4. That enhancement -- for possessing a firearm "in connection with another felony offense" -- was applied for his concomitant offense of theft by shoplifting, a felony. Doc. 87 at 8-9. He contends that he had a gun while committing a misdemeanor, so no enhancement should apply.

But the Government's evidence demonstrated that he had indeed stolen more than $500 worth of goods, *see* doc. 86 at 27 (trial transcript reflecting Cooper and his confederate stole "almost $1,000 worth of merchandise"); doc. 87 at 8 (Government's argument that the stolen tools "add up to $736 total"), comprising a felony offense. O.C.G.A. § 16-8-14(b)(2) (requiring theft of goods valued in excess of $ 500 at the time of the offense). It is unclear what he believes trial counsel should have done to devalue the stolen tools to bring him back into the misdemeanor realm. And while he is correct that there is a typographical error in the Presentence Investigative Report (PSR), noting that Cooper "possessed the firearm in connection with another felony offense, theft by taking" (PSR at ¶ 17), it doesn't change that he committed a felony with the gun in his pants.[5] Cooper seems to misapprehend that the felony at issue is some other, unrelated misdemeanor offense. Doc. 109 at 3 (conceding that "it was never Cooper's position, that the value of the merchandise stolen from Home [D]epot did not amount to that of a felony offense."). The felony that forms the basis of the enhancement is *the felony he*

---

[5] Indeed, trial counsel raised the typo at sentencing at defendant's behest, but as she admitted to the district court, it amounted to a transcription error and nothing more. Doc. 87 at 6-8.

*committed while in possession of a firearm*. That could only be theft by shoplifting. PSR at ¶ 35 (noting Cooper was charged with theft by shoplifting by the state). The appearance of the words "theft by taking" in the PSR don't somehow magically replace the felony he concedes he committed *while in possession of a firearm*. Doc. 109 at 3. Cooper's convoluted argument that somehow trial counsel deficiently represented him at sentencing is utterly meritless.

The constitutional right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988); *Jones*, 463 U.S. at 754 ("Nothing in the Constitution or our interpretation of that document requires" an appellate attorney "to raise every 'colorable' claim suggested by a client."). The appellate "attorney need not advance every argument, regardless of merit, urged by the appellant[.]" *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Appellate counsel was not deficient for evaluating the panoply of possible arguments available to him and declining to raise those that lacked merit. Cooper's motion fails to demonstrate he is entitled to habeas relief. His motion should

be **DENIED**.[6]

## II. CONCLUSION

For the reasons set forth above, it is plain that Cooper raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the

---

[6] Because his motion is entirely without merit and his contentions are unambiguously contradicted by the record, Cooper's request for an evidentiary hearing (doc. 138 at 13) is **DENIED**. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (a hearing is unnecessary "if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'"); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (same); *Lynn*, 365 F.3d at 1239 (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [movant]'s § 2255 motion.").

Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __7th__ day of June, 2018.

*[signature: R. Smith]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA